OPINION
{¶ 1} Appellant, Lisa A. Mitchell, appeals the judgment entered by the Domestic Relations Division of the Portage County Court of Common Pleas.
 {¶ 2} Appellant and appellee, James "Darwin" Mitchell, were married in December 1984. Two children were born as issue of the marriage: a son born in 1992, who resides with appellee, and a daughter born in 1989, who resides with appellant.
 {¶ 3} At the time of the divorce, appellee was retired from LTV Steel and receiving a pension in the amount of $802 per month. Furthermore, appellee was self-employed, *Page 2 
earning $1,500 per month. Appellee's income was therefore set at $27,620. Appellant was employed as a Licensed Practical Nurse ("LPN") at the time of the divorce. The trial court noted that although appellant's income averaged over $60,000 per year in the three previous years, her income for 2004 would be $46,000 due to the loss of a private client. In the final decree of divorce, appellant was ordered to pay spousal support to appellee in the amount of $400 per month for 66 months. The spousal support was to terminate upon the death of either party, or the cohabitation or remarriage of appellee. In addition, the decree of divorce contains a provision specifically authorizing the court to retain jurisdiction as to the amount of the spousal support award.
 {¶ 4} Appellant filed numerous post-divorce decree motions on May 26, 2006, including a motion to modify spousal support. Subsequently, the magistrate took evidence as it related to appellant's post-divorce decree motions on October 3, 2006. The evidence revealed that appellee was now working at Mittal Steel, at a rate of $17.50 per hour with performance bonuses and overtime. From April 1, 2006 through December 31, 2006, appellee grossed $48,585 through his employment at Mittal Steel. Further, as of August 1, 2006, appellee had received $6,065.11 from his pension.
 {¶ 5} In 2006, appellant worked two jobs, earning $50,811.98 working 40 hours per week at Anna Maria Campus and $28,438.59 working 30 hours per week at Laurel Lake.
 {¶ 6} On October 31, 2006, the magistrate issued a decision stating that appellee's income was $741 per month from his pension and $38,000 from his employment at Mittal Steel. The magistrate also found that appellant's income was $65,000. However, in that decision, the magistrate failed to rule on appellant's motion *Page 3 
to modify spousal support. As a result, the magistrate issued a nunc pro tunc decision terminating spousal support, effective June 1, 2006.
 {¶ 7} Appellee filed his objection to the magistrate's decision on November 22, 2006. In his objection, appellee requested:
 {¶ 8} "[T]hat the Court correct the Magistrate's decision or return the case for further hearing to the Magistrate to determine the party's income, and whether or not the income disparity would cause a modification of the spousal support rather than the termination of the spousal support. Further, the Court should modify the child support accordingly and grant Plaintiff-husband an award of exemption for his son for tax year 2006 and all years thereafter."
 {¶ 9} On April 17, 2007, the trial court held a hearing on the objections to the magistrate's decision. The trial court issued its decision on May 23, 2007. In that judgment entry, the trial court determined that appellee's income was approximately $50,000 from both his pension and employment at Mittal Steel. The trial court found appellant's income to be approximately $79,000. The trial court determined the magistrate had abused its discretion in terminating spousal support and, as a result, it modified spousal support to $200 per month. In addition to modifying spousal support, the trial court also recalculated child support and modified the tax dependency exemption.
 {¶ 10} Appellant filed a timely notice of appeal, raising the following issues on appeal:
 {¶ 11} "[1.] The trial court erred by not considering the factors listed in R.C. 3105.18(C) when it modified spousal support.
 {¶ 12} "[2.] The trial court erred by making a mathematical miscalculation. *Page 4 
 {¶ 13} "[3.] The trial court erred by modifying the child support obligation and the tax dependency exemptions."
 {¶ 14} "The decision to adopt, reject or modify a magistrate's decision will not be reversed on appeal unless the decision was an abuse of discretion." Bandish v. Bandish, 11th Dist. No. 2002-G-2489,2004-Ohio-3544, at ¶ 13. (Citations omitted.) "The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 15} Appellant raises three arguments under her assignments of error. First, appellant contends that the trial court did not properly consider the factors for awarding spousal support. R.C. 3105.18(E) provides that a court does not have jurisdiction to modify a spousal support order unless the circumstances of either party has changedand the decree of divorce reserved the court's jurisdiction to modify the amount or terms of spousal support. In the instant case, since the trial court specifically retained jurisdiction to modify spousal support in its decree of divorce, the court must determine whether there has been a change in circumstances of either party. R.C. 3105.18(E). "[A] change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F).
 {¶ 16} If the trial court finds a change of circumstances, it must determine whether the existing spousal support should be modified.Kucmanic v. Kucmanic (1997), 119 Ohio App.3d 609, 613. In order to conduct this reevaluation, the trial court should look to R.C. 3105.18(C)(1), which enumerates the factors a trial court must *Page 5 
consider in determining whether the spousal support award remains appropriate and reasonable.
 {¶ 17} "In determining whether the change in circumstances warrants a modification of spousal support, the court must set forth the basis of their decision in sufficient detail to allow for proper appellate review, however, the court need not reiterate those factors under R.C. 3105.18(C)(1) which remain unchanged from the time of the original award of support." Anspach v. Anspach, 11th Dist. No. 2007-G-2762,2007-Ohio-5207, at ¶ 18, citing Kucmanic v. Kucmanic,119 Ohio App.3d at 613. "This is true even though evidence was introduced below and contained in the record which may support some award of spousal support." Killing v. Killing, 11th Dist. No. 93-P-0096, 1994 Ohio App. LEXIS 4425, at *7. (Citation omitted.)
 {¶ 18} While the judgment entry in this case states that the trial court based its decision to modify spousal support "on all of the evidence," the trial court failed to state "specific findings and sufficient details," which would allow for proper appellate review. Without rendering a decision as to the amount of the spousal support award, we remand the case so that the trial court may revisit the issue of spousal support.
 {¶ 19} As this court has repeatedly explained:
 {¶ 20} "While there is some evidence which arguably supports the award, it would be improper for this court to perform the intermediate analytical steps which the trial court neglected to recite. We refuse to speculate regarding the deliberative process employed by the trial court in reaching its spousal support award. The better approach is to remand this case in order that the trial court may comply with the mandates of[Kaechele v. Kaechele (1988), 35 Ohio St.3d 93] by setting forth the basis for its *Page 6 
decision.'" Herman v. Herman (Mar. 28, 1997), 11th Dist. No. 96-P-0184, 1997 Ohio App. LEXIS 1223, at *13.
 {¶ 21} Therefore, this argument propounded by appellant has merit.
 {¶ 22} Second, appellant argues the trial court erred in its calculation of appellee's income for purposes of determining the child support and spousal support obligations. In order to compute an obligor spouse's child support and spousal support obligations, a trial court must determine both parties' annual income. See, e.g., R.C. 3105.18
(award of spousal support; modification) and R.C. 3119.02 (calculation of obligor's child support obligation; monthly figure; periodic payments).
 {¶ 23} In its May 23, 2007 judgment entry the trial court stated:
 {¶ 24} "The Court also herein determines that Plaintiff [appellee] is now employed and his total income from his pension and employment is approximately $50,000.00. The Court likewise determines that Defendant's [appellant's] income is approximately $79,000.00."
 {¶ 25} Appellee's 2006 W-2 indicated he earned $48,585 in income for a nine-month period through his employment at Mittal Steel. At trial, testimony was introduced that appellee began working at Mittal Steel on April 1, 2006, earning $17.50 per hour and averaging 40 hours per week. Testimony was also presented that appellee earned overtime pay and bonuses dependent on the amount of steel produced. The trial court reasoned that appellee's regular pay could be deduced by taking appellee's hourly wage of $17.50 and multiplying it by 40 hours per week; this total would then be multiplied by the number of weeks from April 1, 2006, the start of appellee's employment at Mittal Steel, to December 31, 2006. Therefore, the difference between *Page 7 
appellee's regular pay and $48,585, the amount stated on his 2006 tax return, would be income earned from working overtime and earning bonuses.
 {¶ 26} In addition to income from working at Mittal Steel, appellee was receiving a monthly pension payment from LTV Steel. The record reveals that at the time of the parties' divorce, appellee was earning $802 per month in pension funds from LTV Steel, approximately $9,624 per year. It appears from the final decree of divorce that the trial court intended appellee's monthly pension payments to be considered into the calculation of his total yearly income. In 2006, appellee's W-2 indicated he received $9,021.71 from the LTV Steel pension fund.
 {¶ 27} Appellant maintains the trial court should have estimated appellee's total income at $73,800. In arriving at this amount, appellant argues the trial court should have determined appellee's average monthly salary by dividing his income of $48,585 by nine months. This average monthly wage should then have been multiplied by 12 months to determine his annual income received from Mittal Steel. In addition to his annual income from his employment at Mittal Steel, the trial court should have included the $9,021.71 from the LTV Steel pension fund and thereby arrived at a total annual income of $73,800.
 {¶ 28} Appellant argues appellee's pension income should be calculated into his total annual income. Conversely, appellee claims the pension income is to be excluded in this calculation since it constitutes nonrecurring income. Appellee maintains that his pension has decreased in the last two years and it "may be reduced and/or terminated at any time due to the bankruptcy filing of his former employer, LTD [sic] Steel."
 {¶ 29} R.C. 3119.01(C)(7) defines gross income as the total of all earned and unearned income from all sources, including pensions. Under R.C. 3119.01(C)(7)(e), *Page 8 
nonrecurring income is excluded from a parent's gross income when calculating child support. "Nonrecurring income" is defined as "an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C. 3119.01 (C)(8).
 {¶ 30} Although the amount of appellee's pension has been slightly reduced, the definition of gross income includes pensions and appellee has continuously received his monthly pension payment from the time he was forced to retire. We therefore find the amount of appellee's pension should be included in the calculation of his total income.
 {¶ 31} In addition, appellee received income from overtime and bonuses from Mittal Steel during 2006. R.C. 3119.05(D), which governs the calculation of gross income, provides:
 {¶ 32} "(D) When the court or agency calculates the gross income of a parent, it shall include the lesser of the following as income from overtime and bonuses:
 {¶ 33} "(1) The yearly average of all overtime, commissions, and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed;
 {¶ 34} "(2) The total overtime, commissions, and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed."
 {¶ 35} The trial court's judgment entry reflects it considered both appellee's income from his employment at Mittal Steel and his pension when calculating his total income. However, at the time the trial court issued its judgment entry, no evidence existed relative to appellee's overtime and bonuses for the three previous years, and *Page 9 
the trial court could only speculate as to the overtime and bonus component included in his 2006 income.
 {¶ 36} Further, we find it difficult to determine from the trial court's judgment entry whether appellee's pension was, in fact, calculated into his total yearly income. In addition, this court cannot determine whether the trial court extrapolated appellee's income over a 12-month period. Therefore, it is difficult for this court to conclude whether the trial court abused its discretion. Accordingly, we remand the matter to the trial court to provide a detailed explanation of the method employed when calculating appellee's income.
 {¶ 37} In her third argument, appellant argues the trial court erred by modifying the tax dependency exemption. R.C. 3119.82, which sets forth the procedure a trial court must adhere to when determining the party that should receive the tax dependency exemption states, in pertinent part:
 {¶ 38} "Whenever a court issues, or whenever it modifies, reviews, or otherwise reconsiders a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes * * *. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children."
 {¶ 39} While appellant maintains the trial court erred in its decision, she fails to put forth any arguments in support of her assertion. Further, upon a review of the *Page 10 
record, we do not find appellant affirmatively demonstrated that the trial court abused its discretion in deciding this issue. In its decision, filed May 23, 2007, the trial court specifically stated:
 {¶ 40} "The Court has not received any information from the parties, but has applied the statutory provision to determine the tax exemption benefits to the parties for claiming the children. Accordingly, the Court has concluded that it is in the best interests of the children that Plaintiff shall claim the child in his care and custody for tax exemption and Defendant shall claim the child in her care and custody as tax exemption."
 {¶ 41} Accordingly, we find no abuse of discretion in the trial court's determination in awarding the tax dependency exemption.
 {¶ 42} For the foregoing reasons, the judgment of the Domestic Relations Division of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and this matter is remanded for further proceedings consistent with this opinion.
 COLLEEN MARY OTOOLE, J., MARY JANE TRAPP, J., concur. *Page 1